PHINEAS W. SPRAGUE et al., Appellants, *v.* GUSTAVUS P. HOSMER et al., Respondents.

In an action by plaintiffs, as assignees of common carriers of the freight on a cargo of staves shipped by defendants from T. to N. Y., plaintiffs, for the expressed purpose of proving ownership of the cause of action, offered in evidence, the bill of lading, executed about six years before the trial, indorsed by the carrier to a bank as security for plaintiffs' acceptance and payment of an accompanying draft; also with an indorsement thereon, signed by the bank and directed to plaintiffs, as follows: "Upon your acceptance of the draft the bill of lading is placed in your custody to col-

lect and apply the first proceeds in payment of the draft." This evidence was rejected. Plaintiffs also offered to prove by parol an acceptance which was rejected. *Held*, error; that the presumption from the possession of the draft was that plaintiffs had complied with the condition precedent, *i. e.*, the acceptance of the draft; that, although plaintiffs could not be charged as acceptors without showing a written acceptance, yet, as defendants were not parties to the draft, or privies, and the fact of acceptance was collateral to the issues herein, it might be proved by parol.

(Argued October 11, 1880; decided November 9, 1880.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment entered upon an order nonsuiting plaintiffs on trial.

This action was brought by plaintiffs, as assignees of the carriers, of the freight, upon a cargo of staves shipped by defendants from Tonawanda to New York. The complaint alleged the shipment of the staves; their transportation by the carriers a portion of the way, when further progress was rendered impossible by the closing of the canal by ice, and the assignment of the bill of lading and of the claim for freight to the plaintiffs; also that before the resumption of navigation in the spring, defendants, without the consent of the carriers or their assignees, forcibly took possession of the staves without paying freight, etc.

Upon the trial of the action plaintiffs offered in evidence the bill of lading, which was dated November 1, 1869, with the indorsement of the common carriers, and also with the following indorsement:

" To Sprague & Favill:

The annexed bill of lading is indorsed over and transferred to the Farmers and Mechanics' National Bank of Buffalo, as collateral security for your acceptance and payment of the accompanying draft for $1,026.97, in pursuance of the act, chap. 320, of the Laws of New York, passed in 1858, and the amendments thereof, passed in 1859 and in 1866, and upon your acceptance of the draft, the bill of lading is placed in your custody to collect, and pply the first proceeds to the pay-

ment of the draft without recourse to the bank, and upon payment of this draft the claim of the bank will cease.

H. G. NOLTON, *Cashier.*"

This offer was made as stated, "not as evidence of the contract of affreightment, but as evidence of the amount of freight and tolls, also as evidence of our ownership of the cause of action by assignment." The paper was objected to and excluded. Plaintiffs also offered to show by parol the acceptance of the draft. This was objected to and excluded, to which rulings plaintiffs' counsel duly excepted. Further facts appear in the opinion.

*Edward D. McCarthy* for appellants.

*A. W. Tenney* for respondents. Custom cannot control the rules of law. (*Higgins* v. *Moore*, 34 N. Y. 417.)

FOLGER, Ch. J. The plaintiffs put in a bill of lading of the property. It showed that the defendants were the consignors, and E. E. Vanderlip was the consignee. *Prima facie*, they or he had right to possession and control of it, subject to the conditions of the bill of lading. (*Lawrence* v. *Minturn*, 17 How. [U. S.] 100.) By those it was subject to the cost of transportation and canal tolls. The plaintiffs may not seriously contest this. The most that they can successfully claim is a lien for freight money and tolls, and a right to hold the cargo until payment thereof. That lien and that right, if they exist at all, are shown by an instrument in writing. It is in effect one between the plaintiffs and the defendants; for it was made for the latter by their agents, the forwarders of the goods; and with the former through their assignors. This contract is the foundation of the plaintiffs' right. They offered it in evidence. It would and should have been received, had it been offered generally as evidence of a contract of affreightment. It was not by the very terms of the offer; but as evidence of an ownership of the cause of action by assignment. It did not alone,

unaided by presumptions or other evidence, prove that. It showed that the plaintiffs had not a personal right in it unless they had performed a condition precedent ; that was, the acceptance of a draft that went with it. The fact of acceptance was either to be presumed or to be shown by proof *aliunde*. An acceptance, to charge, in this State, must be in writing. (1 R. S 768, § 6.)  The plaintiffs offered to prove by parol the fact of acceptance.  The court declined proof by parol, and required the production of the draft.  The plaintiffs' position is, that no evidence was needed save the presumption arising from their possession of the contract of affreightment ; that it was to be presumed that it came into their hands honestly and in pursuance of the conditions indorsed upon it.  When a party to a forensic proceeding tenders in support of his case, a document which must be taken *prima facie* to be the property of another, a court will presume that he did not come by it in a tortious way (Littleton, book 3, ch. 5, §§ 375-377), for wrongful or tortious conduct will not be presumed.  We may not, then, assume that the plaintiffs became possessed of the bill of affreightment otherwise than honestly.  Though there are several ways to be conceived of in which it is possible that they may have got it honestly, another presumption comes in here to indicate the one honest way in which they got it.  It is of the class that is drawn from the ordinary conduct of mankind, the habits of society, the usages of trade, and the natural and usual course of business.  (*Roberts* v. *Bethell*, 12 C. B. 778.)  Here we find the plaintiffs at the time of the trial, in May, 1875, in visible and notorious possession of a contract of affreightment which had been made and delivered to another over six years before. It was an instrument which they could not rightfully claim to own, unless they had complied with a condition precedent to their obtaining ownership.  That condition precedent was of importance to that other party, who had a pecuniary interest in having it performed before the instrument left his hands to come to the control of the plaintiffs. It is contrary to the ordinary conduct of mankind, to the habits of society, to the usages of trade and the natural and usual course of business, that the

party thus interested should be silent under the possession of that instrument by the plaintiffs, and should have made no attempt to take it therefrom, if it went there illegally or otherwise than in compliance with the conditions on which it could alone rightfully become the property of the plaintiffs. It is so highly probable that men will act as is their pecuniary interest, that the presumption is, in the absence of contrary proof, that in a given case they have so acted. So the giving of a promissory note is presumptive that the payee owes nothing to the maker. (*DeFreest* v. *Bloomingdale*, 5 Den. 304.) The return of an execution satisfied raises the presumption that the plaintiff in it received the money. (*Boyd* v. *Foot*, 5 Bosw. 110.) Payment of an obligation is presumed where the obligatory instrument is in the possession of the obligor. (*Garlock* v. *Geortner*, 7 Wend. 198 ; *Alvord* v. *Baker*, 9 id. 323 ; *Braman* v. *Bingham*, 26 N. Y. 493.) Here the possession by the plaintiffs of the contract, which it was the pecuniary interest of the first assignee to hold until the condition precedent to a right to it had been performed by the plaintiffs, raises the presumption that that condition had been satisfactorily met. As the ordinary and natural way to meet it was to accept the draft named in it, the presumption is that the draft was accepted. Otherwise the first assignee would not have voluntarily let go of the contract ; and if it had been got from him wrongfully, would have pursued it.

There is another consideration. The defendants are not parties to the draft, nor privies. The fact of acceptance of it by the plaintiffs is collateral to the issue in the pending action. Though the plaintiffs could not be charged as acceptors, unless their acceptance was in writing, and in a suit against them as acceptors the written acceptance would need to be produced, or the absence of it accounted for, yet, in this action, the fact of an acceptance may be proved by parol, inasmuch as it is a collateral fact. A stranger to a written instrument may dispute the truth of its contents by oral proof ; and so far as a controversy is with a stranger to it, a party to it may do the same ; *McMaster* v. *Ins. Co.* (55 N. Y. 222.) *A fortiori* may a

party to it, in such a controversy, prove by parol that it had existence. Thus the fact of a tenancy may be proved by parol, though there be a written lease (*Rex* v. *Kingston-upon-Hull*, 7 B. & C. 611), which is recognized in *Augustien* v. *Challis* (1 Exch. [Wels., Hurl. & Gord.] 279), though it is there held that the lease must be produced if it is sought to show that rent was due. (See, also, *Whitfield* v. *Brand*, 16 M. & W. 282.) The principle seems to be, that the contents of a written instrument cannot be given in evidence by parol when the contract contained in it is the subject of the suit (*per* PARKE, B., *Strother* v. *Barr*, 5 Bing. 136) ; but, as is the inference, the existence of the relation under the instrument, and the fact of the existence of it, may be. (See *Davis* v. *Reynolds*, 1 Starkie's N. P. 92). By statute in Virginia, a gift of a slave was not valid unless in writing and recorded ; but parol evidence was admitted of the existence of a deed of gift, to show the nature of the possession. (*Spiers* v. *Willison*, 4 Cranch, 398 ; see, also, *Dennett* v. *Crocker*, 8 Greenl, 239.)

For these two reasons, without noticing other points made by the plaintiffs, it seems that there was error in not taking parol proof of the fact of an acceptance of a draft accompanying the contract of affreightment, and in not receiving that contract in evidence.

The judgment should be reversed and a new trial ordered, etc.

All concur.

Judgment reversed.